IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ANN KEOHO,<br><br>         Plaintiff,<br><br>   vs.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>         Defendant. | Civil No. 23-00399 MWJS-KJM<br><br>ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

## **INTRODUCTION**

Under the regulations governing Social Security proceedings, the Commissioner must use a "special technique" to "evaluate the severity of mental impairments" when resolving a claim for disability benefits.  20 C.F.R. § 404.1520a(a) (2023).  In this appeal of a denial of Social Security benefits, Plaintiff Ann Keoho contends that the Commissioner—acting through an Administrative Law Judge (ALJ)—erred by failing to apply that special technique to her mental impairment of Somatic Symptom Disorder.

Before this Court, the Commissioner effectively concedes that the ALJ did not apply the special technique to Keoho's somatic impairment.  But he argues that the failure of Keoho and her counsel to explicitly press the somatic impairment before the ALJ amounts to a waiver of that claim.  The Commissioner also offers

the backup argument that any error was harmless, as the ALJ did generally

consider the physician report on which Keoho's Somatic Symptom Disorder

diagnosis was based, and the ALJ generally found that report to be unpersuasive.

      Keoho has the better of these arguments.  The administrative record in this

case presents a colorable claim of Somatic Symptom Disorder; indeed, a physician

found it to be the "defining diagnosis in her particular case."  ECF No. 8-8, at

PageID.1496 (Administrative Record (AR) at 1465).  In these circumstances, the

Court cannot say that Keoho waived the issue of her somatic impairment, and the

Commissioner—who fails to cite any authority to support his waiver argument—

does not adequately develop any argument to the contrary.  Nor was the failure to

apply the special technique harmless; although the ALJ found the supporting

physician's report generally unpersuasive, the ALJ does not appear to have

assessed the report with the attributes of a somatic impairment in mind, and the

Court cannot say whether the ALJ would have reached the same conclusion had he

done so.

      For these reasons, the Court REVERSES the decision denying Keoho's

applications and REMANDS this case for further administrative proceedings.

## BACKGROUND

1.   Social Security regulations "set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act."  *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  The steps are:

> (1) Is the claimant presently working in a substantially gainful activity?  (2) Is the claimant's impairment severe?  (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations?  (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25 (citing 20 C.F.R. § 404.1520).

The second and third steps of this sequential analysis call for an evaluation of a claimant's "impairment[s]."  These might be physical or mental impairments. And when it comes to evaluating the severity of mental impairments, the Social Security regulations provide that the Commissioner "must follow a special technique."  20 C.F.R. § 404.1520a.

The special technique requires the Commissioner to (1) evaluate whether the claimant has a "medically determinable" mental impairment, *id.* § 404.1520a(b)(1); (2) "rate the degree of functional limitation resulting from the impairment(s)" for four functional areas, *id.* §§ 404.1520a(b)(2), a(c); (3) determine "the severity" of the mental impairment, *id.* § 404.1520a(d); and (4) if

3

the impairment is "severe," proceed to step three of the five-step sequential analysis and determine whether the impairment meets or equals the severity of a specific listed mental disorder, *id.* § 404.1520a(d)(2).

These elaborate requirements of the special technique bear witness to the fact that assessing "functional limitations" from a mental impairment "is a complex and highly individualized process that requires [the Commissioner] to consider multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." *Id.* § 404.1520a(c)(1).

Leaving little to chance, the regulations also include detailed requirements for *documenting* the application of the special technique. *Id.* § 404.1520a(e). Under these regulations, an ALJ is required to "document application of the technique in the decision." *Id.* That is, "the written decision *must* incorporate the pertinent findings and conclusions based on the technique" and "*must* include a specific finding as to the degree of limitation in each of the functional areas." *Id.* § 404.1520a(e)(4) (emphases added). Although an ALJ is not required to extensively "document the considerations underlying [their] findings" in the four functional areas, they are still required to make specific findings as to each of those functional areas. *Keyser*, 648 F.3d at 726. "Failure to do so requires remand." *Id.* (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005)).

2.   In this case, Keoho filed concurrent applications for Supplemental

Security Income and Social Security Disability Insurance.[1]  She argued that she

has been disabled since June 2012.  ECF No. 1, at PageID.1-2.

The ALJ scheduled an administrative hearing.  In advance of that hearing,

Keoho's counsel submitted a brief to the ALJ that did not explicitly list Somatic

Symptom Disorder as one of Keoho's impairments, focusing instead on other

physical and mental limitations.  ECF No. 8-7, at PageID.435-37 (AR at 406-08).

Then, during the hearing itself, neither Keoho nor her counsel explicitly referenced

somatic impairment.  ECF No. 8-3, at PageID.66-89 (AR at 41-64).  After an

administrative hearing, the ALJ denied Keoho's applications in a written decision,

which likewise did not refer to somatic impairment.  *Id.* at PageID.40-55 (AR at

15-30).

Instead, for purposes of the second and third steps of the five-step sequential

process, the ALJ identified Keoho's severe impairments as "degenerative disc

disease of the cervical spine; degenerative disc disease of the lumbar spine; and

obesity."  *Id.* at PageID.43 (AR at 18).  The ALJ found that, together, those

impairments did not "meet or equal the criteria of any listed impairment."  *Id.* at

---

[1]     The regulations governing Supplemental Security Income are at Part 416 of
20 C.F.R., and the regulations governing Social Security Disability Insurance are at
Part 404 of 20 C.F.R.  Because the regulations governing both "essentially mirror
each other," *Briggs v. Sullivan*, 886 F.2d 1132, 1135 (9th Cir. 1989), the Court
includes only citations to the latter.

PageID.47 (AR at 22).  The ALJ also identified a "medically determinable mental impairment of adjustment disorder with depressed mood," analyzed that impairment, and concluded that it was "nonsevere."  *Id.* at PageID.43 (AR at 18). At steps four and five, the ALJ ultimately concluded that Keoho has the residual functional capacity to perform light work, with certain restrictions, and that she is not disabled because she is capable of performing reasonably available work.  *Id.* at PageID.47-55 (AR at 22-30).  The ALJ therefore denied Keoho's applications. *Id.* at PageID.55 (AR at 30).

The Appeals Council thereafter denied Keoho's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *Id.* at PageID.26-28 (AR at 1-3).  Keoho's appeal followed, and this Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

## STANDARD OF REVIEW

This Court must affirm an ALJ's disability determination unless "it is either not supported by substantial evidence or is based upon legal error."  *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).  These review standards are deferential because, "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the

agency." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (cleaned up).

That said, deference to an ALJ is not well placed where the ALJ has not actually made use of their expertise.  And so, as the Ninth Circuit has put it, courts "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

## **DISCUSSION**

As Keoho frames it, the question in this case is whether the ALJ used his expertise to properly evaluate her mental impairment of Somatic Symptom Disorder.  The Commissioner, however, does not dispute—and therefore effectively concedes—that the ALJ failed to apply the required special technique to that mental impairment.  The Commissioner's argument is, instead, that Keoho waived any reliance on her somatic impairment because she and her counsel did not directly identify the impairment for the ALJ.  The Commissioner also makes the backup argument that any error in failing to apply the special technique to Keoho's somatic impairment would be harmless, because her diagnosis was made in a physician report that the ALJ generally reviewed and found generally

7

unpersuasive.  The Court proceeds to take up each of the Commissioner's arguments in turn.

1.  During the proceedings before the ALJ, Keoho and her counsel do not appear to have distinctly brought Keoho's somatic impairment to the ALJ's attention.  And in this light, it is perhaps understandable why the ALJ did not engage with that impairment.  The question is whether the litigation choices (or oversights) of Keoho and her counsel might afford a basis for affirming the ALJ's decision.

The Commissioner says they do.  As he points out, an ALJ is not obligated to apply the special technique to every conceivable mental impairment in the administrative record.  Instead, the ALJ is only required to apply that technique where the claimant has made a "colorable claim of mental impairment."  *Keyser*, 648 F.3d at 726 (quoting *Gutierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir. 2000)). The Commissioner contends that Keoho "did not make any claim, colorable or otherwise, that she suffered" from Somatic Symptom Disorder, because (1) when asked to list all of the physical or mental conditions that limited her ability to work, Keoho "identified depression and anxiety as her only mental impairments"; (2) Keoho's attorney "also submitted a brief to the ALJ in advance of the administrative hearing, which never mentioned a somatic disorder"; and (3) neither

8

Keoho nor her attorney "mentioned any somatic impairments at the administrative

hearing."  ECF No. 13, at PageID.2359.

The Commissioner's answering brief does not identify any case authority to

support his argument that these failings amount to a waiver, however.  Nor does

his brief acknowledge, or grapple with, the fact that the administrative record

before the ALJ did clearly tee up Keoho's somatic impairment in other ways.  In

particular, the evidence in the administrative record includes:  (1) Keoho's Form

SSA-3368 Disability Report, in which she identified "Somatic symptom disorder"

as a mental impairment for which she had been diagnosed, ECF No. 8-7, at

PageID.368 (AR at 339); and (2) the report prepared by Dr. Danilo Ponce in

support of Keoho's worker's compensation claim, ECF No. 8-8, at PageID.1481-

99 (AR at 1450-1568).  The latter submission is especially significant because Dr.

Ponce identified Somatic Symptom Disorder as "the defining diagnosis" in

Keoho's case, "with depression assuming a secondary role, as a direct sequelae of

the pain complaints."  *Id.* at PageID.1496 (AR at 1465).  This is not a passing or

ambiguous reference to a possible mental impairment.  Instead, it is an emphatic

conclusion that a particular mental impairment is Keoho's "defining diagnosis."

And although the ALJ explicitly "considered the evaluation . . . by Dr. Ponce," he

did not mention this core conclusion.  ECF No. 8-3, at PageID.46 (AR at 21).

The Commissioner's brief offers no argument or authority to support the conclusion that Dr. Ponce's report, together with Keoho's own listing of Somatic Symptom Disorder in her Form SSA-3368, would not be sufficient to make out a colorable claim of a mental impairment of Somatic Symptom Disorder.  And it would be incongruous to hold that a disability claimant has waived a claim by failing to adequately press it before an ALJ when the Commissioner has not adequately pressed his waiver argument in this Court.

In any event, from its own review of the case law, the Court cannot conclude that Ninth Circuit precedent obviously requires a finding of waiver under these circumstances.  To be sure, Ninth Circuit precedent provides that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."  *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).  Rather than assess "new evidence," a reviewing court should generally only consider "the evidence that was before the ALJ."  *Id.*  But in this case, there is ample evidence of Keoho's Somatic Symptom Disorder in the administrative record, and Keoho's brief submitted to the ALJ directly raised Dr. Ponce's report.  *See* ECF No. 8-7, at PageID.436 (AR at 407).  Keoho's argument thus is not that this Court should remand based on evidence the ALJ had no opportunity to consider, but rather that the ALJ should have further engaged with the evidence before him; indeed, although the ALJ "considered the

10

evaluation . . . by Dr. Ponce," he made no reference to the report's central finding of Somatic Symptom Disorder.  ECF No. 8-3, at PageID.46 (AR at 21).  The rule of *Meanel* is therefore not on all fours with the present case, and the Commissioner—by not citing, much less addressing, *Meanel*—has waived any argument that it should be extended to these somewhat different circumstances.

It bears noting, however, that Keoho appears to push too far in suggesting that she had *no* obligation to press any issues before the ALJ.  Citing a plurality in *Sims v. Apfel*, 530 U.S. 103, 111 (2000), Keoho makes the generalized argument that ALJs are required to develop the record and identify a claimant's best arguments even where the claimant, represented by counsel, has declined to make those arguments for herself.  But *Sims* did not address proceedings before an ALJ. Instead, it addressed submissions to the Appeals Council following an ALJ decision.  And because *Sims* specifically noted that "[w]hether a claimant must exhaust issues before the ALJ [wa]s not before" it, *id.* at 107, the Ninth Circuit has concluded that *Sims* is not irreconcilable with *Meanel*, and "*Meanel* therefore remains binding on [the Ninth Circuit] with respect to proceedings before an ALJ." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017).[2]

---

[2]    More recently, the Supreme Court concluded that constitutional Appointments Clause challenges, over which an ALJ would have no apparent expertise, need not be exhausted before an ALJ.  *Carr v. Saul*, 593 U.S. 83 (2021). The Court made clear, however, that "[o]utside the context of Appointments

The upshot is this:  Keoho had an obligation, under *Meanel*, to present evidence of her Somatic Symptom Disorder to the ALJ.  But Keoho *did* sufficiently present that evidence in this case—or, at least, the Commissioner has not adequately advanced any argument to the contrary.  And it follows that waiver cannot excuse the fact that the ALJ, faced with a clear and emphatic diagnosis of Somatic Symptom Disorder, did not explain how he weighed that diagnosis in his decision to deny benefits, including through the application of the special technique.  The ALJ's omission "requires remand."  *Keyser*, 648 F.3d at 726 (quoting *Moore*, 405 F.3d at 1214).

2.   Resisting these conclusions, the Commissioner presses a backup argument:  that even if the ALJ erred by failing to apply the special technique to Keoho's somatic impairment, any error would be harmless.  The Commissioner points to the fact that the ALJ found Dr. Ponce's report generally unpersuasive, and he argues that if that report is generally unpersuasive, then the somatic impairment diagnosis within it (even if not specifically addressed) must also fall.

The Court disagrees.  On this record, the Court cannot conclude that the ALJ's error in not applying the special technique specifically to Keoho's Somatic Symptom Disorder was "inconsequential to the ultimate nondisability

---

Clause challenges, such as in the sphere of routine objections to individual benefits determinations, the scales might tip differently."  *Id.* at 92 n.5.

determination" or that, despite the error, "the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (quoting *Treichler*, 775 F.3d at 1099). That is because the signs and symptoms of Somatic Symptom Disorder include "pain and other abnormalities of sensation" that "cannot be fully explained by a general medical condition [or] another mental disorder." *Obiol v. Comm'r of Soc. Sec. Admin.*, No. 22-cv-00553, 2023 WL 5436591, at *5 (D. Ariz. July 21, 2023) (alteration in original) (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(B)(6)(a)), *adopted by* 2023 WL 5432317 (D. Ariz. Aug. 23, 2023). As a consequence, if an ALJ "disregards a legitimate case of somatic symptom disorder," then "it is doubtful that [they] will account for corresponding symptoms at any of the remaining stages of the disability analysis." *Id.* at *6; *see also id.* ("[S]omatic symptom disorder can provide credibility to purported symptoms otherwise subject to rejection as feigned or unsubstantiated.").

Indeed, there are indications that this is precisely what happened in Keoho's case. For example, in concluding that Dr. Ponce's rating of Keoho's impairments was unpersuasive, the ALJ reasoned that "Dr. Ponce's own rationale for the ratings appears to be that pain is the cause for any 'limitations', which further supports that there is no objective evidence of mental status examinations or such assessments to support that the claimant['s] psychological symptoms are causing longitudinal functional limitations." ECF No. 8-3, at PageID.46 (AR at 21). The

Court cannot say that the ALJ would have reached these same conclusions had he been evaluating Dr. Ponce's report through the lens of Somatic Symptom Disorder—that is, had the ALJ reviewed Dr. Ponce's report with the recognition that a somatic impairment may cause "pain and other abnormalities of sensation" that "cannot be fully explained by a general medical condition or another mental disorder." *Obiol*, 2023 WL 5436591, at *5 (cleaned up).

Remand is therefore warranted. On remand, the ALJ should apply the special technique to Keoho's Somatic Symptom Disorder and assess the reliability of Dr. Ponce's evaluation with that mental impairment in view.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's decision denying Keoho's applications for disability benefits is REVERSED and REMANDED for further administrative proceedings consistent with this Order.

IT IS SO ORDERED.

DATED: March 29, 2024, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

Civil No. 23-00399 MWJS-KJM; *Ann Keoho v. Martin O'Malley*; ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS